UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ARMOND GRAY, | Civil Action |
| Plaintiff, | |
| vs. | Case No.: |
| 3M COMPANY, AERO TECHNOLOGIES LLC, | Jury Requested |
| Defendant | |
| | COMPLAINT AND JURY DEMAND |

**COMPLAINT AND JURY DEMAND**

Plaintiff, Armond Gray ("Plaintiff"), by and through the undersigned counsel, brings this Complaint seeking judgment against Defendants **3M COMPANY** ("**3M**") and **AEARO TECHNOLOGIES LLC** (individually "**AEARO**" and collectively "Defendants" or "**3M/Aearo**") for personal injuries incurred while in training and/or on active military duty, resulting from Defendants' defective and unreasonably dangerous product, the Dual-ended Combat Arms™ earplugs (Version 2 CAEv.2) ("Dual-ended Combat Arms™ earplugs"). At all times relevant hereto, the Dual-ended Combat Arms™ earplugs were manufactured, designed, formulated, tested, packaged, labeled, produced, created, made, constructed, assembled, marketed, advertised, promoted, distributed, and sold by Defendants.

**I.     PARTIES**

1. Plaintiff, Armond Gray, is an individual residing in Houma, Terrebonne Parish, Louisiana, within the Eastern District of Louisiana.

2. Defendant 3M is an entity with its principal place of business located at 3M center, Bldg. 224-5N-40, St. Paul, Minnesota 55144. Defendant 3M is registered to transact business in

COMPLAINT AND JURY DEMAND - 1

Louisiana and may be served with process on its registered agent, Corporation Service Company, located at 501 Louisiana Avenue, Baton Rouge, Louisiana 70802.

3. Defendant Aearo is a limited liability company which, upon information and belief, has 3M as its sole member. Aearo is thus a citizen of Delaware and Minnesota.

## II. JURSIDICTION AND VENUE

4. This court has subject matter jurisdiction over this action under 28 U.S.C. § 1332. Complete diversity of citizenship exists between the parties, and the amount in controversy is greater than $75,000.

5. Personal jurisdiction over the Defendants is proper because they have done business in the State of Louisiana, have committed a tort in whole or in part in the State of Louisiana, have substantial and continuing contact with the State of Louisiana, and derive substantial revenue from goods used and consumed within the State of Louisiana. In fact, there are multiple military bases in the State of Louisiana, that include servicemen from the Army, Air Force, Navy and Marine Corps branches of the military, to which Defendants have provided their products.

6. Defendants purposefully availed themselves to business dealings in the State of Louisiana and could reasonably expect to respond to complaints therein. Defendants' purposeful availment of the benefit and protection of the laws of Louisiana is sufficient to support proper exercise of personal jurisdiction over Defendants.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claim occurred in this District.

### III. FACTUAL ALLEGATIONS

**Plaintiff Armond Gray**

8. Plaintiff joined the U.S. Army in 2003 and was honorably discharged in 2006.

9. Prior to joining the service, Plaintiff had no signs or symptoms of hearing loss or tinnitus.

10. Plaintiff has no family history of hearing loss or tinnitus.

11. Plaintiff was deployed to Afghanistan in 2005-2006.

12. Plaintiff was issued the Duel-ended Combat Arms™ earplugs which were designed, manufactured, marketed and sold by Defendants.

13. Plaintiff wore the duel-ended Combat Arms™ while firing weapons and during training and combat activities which produced dangerous levels of noise.

14. Plaintiff observed and followed all instructions provided by Defendants for the proper and effective use of the Dual-ended Combat Arms™ earplugs.

15. Plaintiff was never instructed to fold back the flanges on the Dual-ended Combat Arms™ earplug.

16. As a results of using these defective earplugs during his time of service, Plaintiff continues to suffer daily from hearing loss and other damages.

**Defendants**

17. On July 26, 2018, 3M agreed to pay $9.1 million to resolve allegations that it knowingly supplied the Dual-ended Combat Arms™ Earplugs to the United States military without disclosing defects that hampered the effectiveness of the hearing protection device. *See United States ex rel. Moldex-Metric, Inc. v. 3M Company, Case No. 3:16-cv-01533-DCC (D.S.C. 2016).* In that case, the United States alleged that 3M, and its predecessor, Aero, knew that the Dual-ended Combat Arms™ Earplugs were too short for proper insertion

into users' ears and that the earplugs could loosen imperceptibly and therefore did not perform well for certain service members. The United States also alleged that 3M did not disclose the design defect to the military.

18. Defendants' Dual-ended Combat Arms™ earplugs are non-linear, or selective attenuation, earplugs which were designed to provide soldiers with two different options for hearing attenuation depending upon how the plugs are worn. If worn in the "closed" or "blocked" position (olive end in), the earplugs are intended to act as a traditional earplug and block as much sound as possible. If worn in the "open" or "unblocked" position (yellow side in user's ear), the earplugs are intended reduce loud impulse sounds, such as battlefield explosions and artillery fire, while allowing the user to hear quieter noises; for example, commands spoken by fellow soldiers and approaching enemy combatants. Both sides of the dual-sided earplugs were purported to provide adequate protection for soldier's ears when worn.

19. These earplugs were originally created by Aero. Aearo was the global market leader in hearing and eye protection and was based in Indianapolis, Indiana. Aearo sold the Dual-ended Combat Arms™ earplugs until being acquired by 3M in 2008 for $1.2 billion (and thus any liability associated with its past conduct.) 3M hired many of the same employees at Aero that developed and tested the defective earplugs.

20. Post-acquisition, the Dual-ended Combat Arms™ earplugs have been marketed and sold by 3M. Because 3M acquired both the assets and liabilities of Aearo, Aearo and 3M are used interchangeably and all allegations against Aearo are directed as a matter of law against 3M and thus 3M is jointly and severally liable for Aearo's conduct as alleged herein.

21. Upon information and belief, 3M/Aero was aware of the defects as early as 2000, several years before 3M/Aero became the exclusive provider of earplugs to the United States military.

22. Defendants knew at the time they received the exclusive contract to supply earplugs to the military between 2003 and 2015, that these earplugs had dangerous defects. The design of the earplug prevents a snug fit in the ear canal of the wearer, an inherent defect about which there was no adequate warning. Defendants' standard fitting instructions state the wearer is to grasp the earplug by the stem and insert it into the ear canal. When inserted according to Defendants' standard fitting instructions, the edge of the third flange of the non-inserted end of the earplug presses against the wearers' ear canal and folds back to its original shape, thereby loosening the seal in their ear canals and providing inadequate protection. Because the earplugs are symmetrical, the standard fitting instructions will result in a loosening of the seal whether either side is inserted into the ear canal.

23. Upon information and belief, these dangerous design defects were known to Aero in 2000 (and later 3M) when it completed testing Dual-ended Combat Arms™ earplugs.

24. Despite this knowledge, in 2003 and possibly earlier, Aero submitted a bid in response to the military's Request for Proposal to supply large quantities of these defective earplugs and entered into a contract pursuant to which it became the exclusive supplier of earplugs to the military.

25. When Defendant Aero/3M initially tested the earplugs prior to becoming the exclusive provider of military earplugs, they were not able to achieve a satisfactory Noise Reduction Rating ("NRR") with either end of the earplugs.

COMPLAINT AND JURY DEMAND - 5

26. In testing, when the closed end (olive side) was inserted into the wearer's ear according to standard fitting instructions, the basal edge of the third flange of the open end (yellow side) would press against the wearer's ear and fold backwards. When the inward pressure on the earplug was released, the yellow side flanges would return to their original shape and cause the earplug to loosen, often imperceptible to the wearer. Testing suggested an average NRR of 10.9, which was far below the adequate NRR that 3M/Aero personnel would and should have expected for the closed end.

27. 3M/Aero tested the subjects with the open end of the Dual- ended Combat Arms™ earplug and obtained a facially invalid -2 NRR, which would indicate that the closed end of the earplug actually amplified sound. 3M/Aero represented the -2 NRR as a "0" NRR which 3M/Aero has displayed on its packaging since its launch. 3M/Aero falsely touted the "0" NRR as a benefit of the Dual- ended Combat Arms™ earplug, by suggesting that soldiers will be able to hear their fellow soldiers and enemies while still providing some protection. As stated however, the "true" -2 NRR actually amplifies sound thereby exposing the wearer to harm.

28. In the second round of testing, the test subjects were instructed to fold back the yellow flanges on the open end of the Dual- ended Combat Arms™ earplug prior to insertion in order to achieve a proper fit. Only by manipulating the earplugs in this way were they able to achieve a satisfactory NRR of 22.

29. However, these same instructions to manipulate the earplugs were not given to service members. Because of this, Plaintiff and other service members only used the earplugs according to instructions provided by the Defendant, which did not instruct them to

COMPLAINT AND JURY DEMAND - 6

manipulate the earplugs to achieve a proper fit. As a result of not being properly instructed, Plaintiff suffered damages.

30. The Dual-ended Combat Arms™ earplugs also deviated from the specifications promulgated by the U.S. Military, the American National Standards Institute, and the Environmental Protection Agency in a manner that rendered them unreasonably dangerous. Specifically, the earplugs did not comply with the Salient Characteristics of Medical Procurement Item Description ("MPID") of Solicitation No. SP0200-06-R-4202.

   a. The pertinent Salient Characteristics set forth in the MPID, which were uniform across all RFPs, in relevant part, are as follows:

   2.1.1 Ear plugs shall be designed to provide protection from the impulse noises created by military firearms, while allowing the wearer to clearly hear normal speech and other quieter sounds, such as voice commands, on the battlefield.

   2.2.2. The sound attenuation of both ends of the ear plugs shall be tested in accordance with ANSI S3.19.

   2.4 Workmanship. The ear plugs shall be free from all defects that detract from their appearance or impair their serviceability.

   2.5 Instructions. Illustrated instructions explaining the proper use and handling of the ear plugs shall be supplied with each unit.

31. 3M/Aearo knew the design defects could cause the earplugs to loosen in the wearer's ear, imperceptibly to the wearer and even trained audiologists visually observing a wearer, thereby permitting damaging sounds to enter the ear canal by traveling around the outside of the earplug, while the user and/or audiologist incorrectly believes that the earplug is working as intended.

COMPLAINT AND JURY DEMAND - 7

32. 3M/Aearo knowingly used the deliberately flawed retest of the closed end of the earplugs to sell Dual-ended Combat Arms™ earplugs to the military with the representation that they possess a "22" NRR in the closed position.

33. Defendants' standard instructions for "proper use" of its Dual-ended Combat Arms™ earplugs do not instruct wearers to fold back the flanges of the opposite end before inserting the plug into the ear. Instead, Defendants improperly instruct wearers to simply insert the earplugs into the ear canal.

34. By failing to instruct wearers of the Dual-ended Combat Arms™ earplug to fold back the flanges on the open/unblocked end of the plug before inserting the closed/blocked end of the plug into their ears (which is necessary to achieve the "22" NRR), 3M/Aearo falsely overstates the amount of hearing protection provided by the closed end of the plug.

35. 3M's/Aearo's packaging and marketing of such earplugs with a labeled NRR of "22" thereby misleads the wearer and has likely caused thousands of soldiers to suffer significant hearing loss and tinnitus in addition to exposing millions more to the risk caused by 3M/Aearo's defective earplugs.

36. 3M/Aearo was aware prior to selling the earplugs to the military, testing procedures and fitting instructions were unlawfully manipulated to obtain the NRRs they wanted on both ends of the Dual-ended Combat Arms™ earplug, and 3M/Aearo continued to use these inaccurate NRRs to market the earplugs to the military for more than ten years without disclosing the design defect in the plugs.

37. Plaintiff reserves the right to supplement these facts after discovery.

## IV. CAUSES OF ACTION

### A. PRODUCTS LIABILITY—DESIGN DEFECT

38. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

39. Defendant was in the business of designing, manufacturing, selling, and/or otherwise placing the Dual-ended Combat Arms™ earplugs in the steam of commerce.

40. Defendants had a duty to manufacture, design, formulate, test, package, label, produce, create, make, construct, assemble, market, advertise, promote, and distribute, the Dual-ended Combat Arms™ with reasonable and due care for the safety and well-being of U.S. military service men and women, including Plaintiff, who were subject to and used the Dual-ended Combat Arms™ earplugs during their service with the U.S. military.

41. At the time the Dual-ended Combat Arms™ earplugs were designed, manufactured and sold by the Defendant, they were defective in design and unreasonably dangerous. The defective and unreasonably dangerous condition of the earplugs in question was a direct and proximate cause of the injuries to the Plaintiff.

42. Plaintiff was a foreseeable user of the Dual-ended Combat Arms™ earplugs and Defendants knew that the Dual-ended Combat Arms™ earplugs would be used by U.S. military service men and women, including Plaintiff.

43. Plaintiff received the earplugs in question in the condition expected and intended by the Defendant.

44. Plaintiff used the earplugs in question for their intended and foreseeable purpose.

45. The Dual-ended Combat Arms™ earplugs are defective in that the design of the earplug causes them to loosen in the wearer's ear, imperceptibly to the wearer, thereby permitting

damaging sounds to enter the ear canal by traveling around the outside of the earplug while the user incorrectly believes that the earplug is working as intended.

46. The defect has the same effect when either end is inserted because the earplugs are symmetrical. In either scenario, the effect is that the earplug may not maintain a tight seal in some wearers' ear canals such that dangerous sounds can bypass the plug altogether thereby posing serious risk to the wearer's hearing unbeknownst to him or her.

47. Safer alternative designs existed other than the one used, which were economically and technologically feasible and would have prevented or significantly reduced the risk of accident and/or injury in question without substantially impairing the utility of the Dual-ended Combat Arms™.

48. The earplugs were defectively designed because the stem was too short, so that it was difficult for users to insert the earplug deeply enough into their ear canal to obtain a proper fit. This improper fit while using the earplugs in question caused Plaintiff's injuries. Defendant could have designed the earplugs with a longer stem so that it would allow users to insert the plug deeper into their ear canal and obtain a proper fit.

49. Each alternative design for the defects in these earplugs was available in the market and would have been technologically and economically feasible at the time the Dual-ended Combat Arms™ earplugs were manufactured and would not have impaired the utility of the earplugs.

50. At the time the earplugs in question were sold, the defective design caused the product to unexpectedly fail to function in a manner reasonably expected by an ordinary consumer. The defective and unreasonably dangerous design of the earplugs in question were a producing cause of Plaintiff's injuries.

51. At the time of Plaintiff's use of the Dual-ended Combat Arms™ earplugs, the earplugs were in the same or substantially similar condition as they were at the time they left Defendant's control and were placed into the stream of commerce.

**B.  PRODUCTS LIABILITY—MANUFACTURING DEFECT**

52. The Dual-ended Combat Arms™ earplugs were originally designed, manufactured, and sold by Defendant. At the time the earplugs in question were sold, Defendant was in the business of designing, manufacturing, selling, and/or otherwise placing the Dual-ended Combat Arms™ earplugs in the steam of commerce.

53. Plaintiff received the earplugs in question in the condition expected and intended by the Defendant.

54. Plaintiff used the earplugs in question for their intended and foreseeable purpose.

55. When they left control of Defendant, defects in the manufacture of the earplugs in question rendered them defective and unreasonably dangerous in that they were difficult for users to insert the earplugs deeply enough into the ear canal to obtain a proper fit. Specifically, the stem of the earplugs was too short. The defective manufacture of the Dual-ended Combat Arms™ earplugs directly and proximately caused Plaintiff's injuries.

**C.  PRODUCTS LIABILITY—FAILURE TO WARN**

56. Defendants failed to give adequate and proper warnings or instructions regarding the dangers of the Dual-ended Combat Arms™ earplugs. Defendant failed to warn potential and actual users of the dangers and risk of the defects. Specifically, Defendant failed to provide adequate instructions to users regarding the need to manipulate the earplugs for proper use. Defendants' failure to warn rendered the earplugs defective and unreasonably dangerous and was a proximate cause of the Plaintiff's injuries and damages.

### D. STRICT LIABILITY

57. The Dual-ended Combat Arms™ earplugs were originally designed, manufactured, and sold by Defendant. At the time the earplugs in question were sold, Defendant was in the business of designing, manufacturing, selling, and/or otherwise placing the Dual-ended Combat Arms™ earplugs in the steam of commerce.

58. Plaintiff received the earplugs in question in the condition expected and intended by the Defendant.

59. Plaintiff used the earplugs in question for their intended and foreseeable purpose.

60. Due to the design, the earplugs in question were not reasonably effective at reducing noise. The failure to appropriately design and manufacture the earplugs, which contributed to their ineffectiveness, was the direct and proximate cause of Plaintiff's injuries.

61. Defendant placed the earplugs into the stream of commerce and expected or could reasonably foresee the use of the Dual-ended Combat Arms™ earplugs by individuals and service members, such as Plaintiff, in the condition in which they were designed, manufactured and sold.

62. The defective condition of the Dual-ended Combat Arms™ earplugs was undiscoverable at the time of use. The defective condition was not observable by Plaintiff, who relied upon Defendant to design, test, manufacture, sell and deliver the earplugs in a condition fit for the purposes intended.

63. As a direct and proximate result of the Defendant failing to properly design, test, manufacture, sell and deliver the earplugs in question, Plaintiff has suffered personal injuries. Thus, Defendant should be held strictly liable.

E. **NEGLIGENCE**

64. Defendants committed acts of omission and commission, which collectively and severally constituted negligence, and that negligence caused Plaintiff's injuries.

65. Defendant's acts or omissions constituting negligence include but are not limited to the following:

   a. Failing to properly design the Dual-ended Combat Arms™ earplugs;

   b. Failing to properly manufacture the Dual-ended Combat Arms™ earplugs;

   c. Failing to adequately test the Dual-ended Combat Arms™ earplugs;

   d. Failing to properly market the Dual-ended Combat Arms™ earplugs;

   e. Failing to properly instruct users of the Dual-ended Combat Arms™ earplugs;

   f. Failing to warn consumers of a known defect/danger with the Dual-ended Combat Arms™ earplugs;

   g. Failing to recall the Dual-ended Combat Arms™ earplugs;

   h. Failing to disclose information known about dangers or defects in the Dual-ended Combat Arms™ earplugs;

   i. Concealing known dangers with the Dual-ended Combat Arms™ earplugs; and

   j. Failing to meet or exceed internal corporate guidelines.

   **PUNITIVE DAMAGES**

66. Defendants have acted willfully, wantonly, with an evil motive, and recklessly in one or more of the following ways:

   a. By failing to disclose material facts regarding the dangerous and serious safety concerns of Dual-ended Combat Arms™ earplug by concealing and suppressing

      material facts regarding the dangerous and serious health and/or safety concerns of Dual-ended Combat Arms™ earplug;

  b. By failing to disclose the truth and making false representations with the purpose and design of deceiving and lulling Plaintiffs, and others, so that they would use and rely upon the Dual-ended Combat Arms™ earplug;

  c. By falsely representing the dangerous and serious health and/or safety concerns of the Dual-ended Combat Arms™ **earplug** to the public at large, and Plaintiff in particular.

## TOLLING OF THE STATUTE OF LIMITATIONS

67. Plaintiff filed this lawsuit within the applicable limitations period of first suspecting that the Dual-ended Combat Arms™ earplugs caused his injuries. Plaintiff could not and did not, by the exercise of reasonable diligence, have discovered the wrongful cause of the Dual-ended Combat Arms™ earplugs-induced injuries at an earlier time, because, at the time of these injuries, the cause was unknown to Plaintiff. Plaintiff did not suspect, nor did Plaintiff have reason to suspect, the cause of these injuries, or the tortious nature of the conduct causing these injuries, until less than the applicable limitations period prior to the filing of this action.

68. Furthermore, the running of any statute of limitations or repose has been tolled by reason of Defendants' fraudulent concealment, including but not limited to through Defendants' affirmative misrepresentations and omissions and Defendants' failure to disclose known but non-public information about the defective nature of the Dual-ended Combat Arms™ earplug – information over which they had exclusive control, as set forth herein.

69. Furthermore, Defendants are equitably estopped from relying on any statutes of limitation or repose by reason of Defendants' active concealment, including but not limited to through Defendants' affirmative misrepresentations and omissions and Defendants' failure to disclose known but non-public information about the defective nature of the Dual-ended Combat Arms™ earplug – information over which they had exclusive control, as set forth herein.

70. As a result of Defendants' actions, Plaintiff was unaware, and could not reasonably know or have learned through reasonable diligence that the Plaintiff had been exposed to the defects and risks alleged herein, and that those defects and risks were the direct and proximate result of Defendants' acts and omissions.

71. Through Defendants' affirmative misrepresentations and omissions pertaining to the safety and efficacy of the Dual-ended Combat Arms™ earplugs, Plaintiff was prevented from discovering this information sooner because Defendants herein misrepresented and continued to misrepresent the defective nature of the Dual-ended Combat Arms™ earplugs.

72. Additionally, pursuant to the Servicemembers Civil Relief Act, the period of Plaintiff's military service may not be included in computing any statute of limitations applicable herein. *See* 50 U.S.C. § 3936.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury as to all claims in this action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that Defendant be cited to appear and answer herein and that after due proceedings are had, that there be judgment in favor of Plaintiff and against

COMPLAINT AND JURY DEMAND - 15

Defendants for the damages set forth below, along with court costs, pre-judgment and post-judgment interest at the legal rate;

    a. The amount of reasonable medical expenses necessarily incurred in the past, and those that will reasonably be incurred in the future;

    b. Pain and suffering (past and future);

    c. Physical disfigurement suffered by Plaintiff (past and future);

    d. Physical impairment suffered by Plaintiff (past and future);

    e. Mental anguish and distress (past and future);

    f. Wage loss (past and future);

    g. Loss of earnings and loss of earning capacity;

    h. Loss of enjoyment of life (past and future);

    i. Cost of suit;

    j. Attorney's fees;

    k. Punitive or exemplary damages in such amounts as may be proven at trial; and

    l. For all such other relief as to which Plaintiff may show himself justly entitled.

THE PENTON LAW FIRM  
503 GEORGIA AVENUE  
BOGALUSA, LOUISIANA 70427  
PHONE: 985-732-5651  
FACSIMILE: 985-735-5579  
E-MAIL: fedcourtmail@thepentonlawfirm.com

/s/ Ronnie G. Penton  
Ronnie G. Penton  
Trial Counsel for Plaintiff  
Louisiana Bar Roll Number 10462